# Davis *v.* Tarver.

*Application by Administrator for Order to sell Lands for Payment of Debts.*

1. *Nature of such application.*—An application to the Probate Court by an administrator, for an order to sell lands for the payment of debts, is a proceeding *in rem* against the lands; but, if the heirs or devisees intervene, and contest the application, it then assumes the further character of a proceeding *in personam*.

2. *Facts in issue; burden of proof; defenses.*—The application being contested by the heirs or devisees, it devolves on the administrator to prove the insufficiency of personal assets, and the existence of debts which are chargeable on the lands; and the heirs or devisees, as defendants, may contest the debts on any ground that would be available to the administrator, or to the decedent himself, if living, in defense of a suit by the creditor.

3. *Competency of parties as witnesses.*—On the trial of such contested application, the competency of the parties as witnesses, and the facts to which they may testify, are governed by the general statute (Code, § 3058) relating to the competency of the parties as witnesses in suits by or against executors or administrators.

[Davis v. Tarver.]

4. *Same; to what party may testify; opinion of physician, on question of insanity.*—The issue, on the trial of such contest, being the validity of a promissory note, signed by the intestate, and payable to the administrator, which the heirs contested on the ground that, at the time of its execution, the intestate was not of sound mind; although the administrator, having been the family physician of the intestate for a long series of years, may testify, as a witness for himself, as to the general sanity of the intestate, and may state the facts on which his opinion is founded; yet, under the statute (Code, § 3058), not being allowed to testify as to "any transaction with, or statement by the deceased," he can not state "what was the condition of his mind at the time the note was given."

5. *Necessaries furnished to person of unsound mind.*—A promissory note, given by a person *non compos mentis*, has no legal validity, although its consideration was necessaries furnished to him; yet, though the note is void, the price of such necessaries is a legal demand against his estate.

6. *Entries made by deceased clerk.*—Entries on a merchant's books, in the handwriting of a clerk since deceased, are competent evidence of the sale and delivery of the goods, when made in the line of his duty, and contemporaneous with the sale and delivery; but they can not be received to show that the goods formed the consideration of a note given by the purchaser, or that they were necessaries suitable to the condition in life of him and his family.

7. *Offer of evidence partly illegal.*—When evidence is offered for two or more specified purposes, and it is not admissible for one of those purposes, the court is not bound to modify or limit the offer, but may reject the evidence entirely.

APPEAL from the Probate Court of Montgomery.

In the matter of the estate of Isham Pettis, deceased, on the application of Leroy W. Davis, the administrator, for an order to sell lands for the payment of debts. The only matters here assigned as error relate to the exclusion of evidence offered by the administrator, who is now the appellant; and the opinion of the court states all the material facts.

L. A. SHAVER, for the appellant.

THOS. M. ARRINGTON, *contra.*

BRICKELL, C. J.—The appellant, as administrator of Isham Pettis, deceased, filed in the Court of Probate an application for the sale of the lands of the decedent, to pay debts. On the hearing, the application was contested by one of the heirs of the intestate, and by an alienee of the widow and heirs, to whom an undivided half of the lands had been conveyed. The contest was limited to the fact of the indebtedness of the intestate. The appellant, to establish an indebtedness, produced a note, of date February 5th, 1873, purporting to be signed by the intestate and his wife, for the payment of four hundred dollars to the appellant, on or before the first day of October next thereafter. The contestants introduced evidence tending to show that the intestate, at, prior, and subsequent to the making of said note, was of unsound mind, incapable of contracting. The appel-

[Davis v. Tarver.]

lant then introduced evidence tending to show that the intestate was subject to epilepsy, but, in the interval between fits, acted as ordinary men do—conversed and behaved rationally, at times worked, and was apparently of sound mind. The appellant then, as a witness in his own behalf, testified, that he had been a physician about thirty years; that he had known the intestate about sixteen years, and had been living the greater part of the time near him; that for fifteen years of that time, and until the last year before his death, he was the family physician of the intestate; that the intestate was subject to epileptic fits, and, when these were upon him, and for a short time afterwards, he was in a state of unconsciousness, but, in the interval between fits, he was of sound mind; and that he knew the condition of the mind of the intestate on the 5th February, 1873. He was then asked by his counsel, "What was the condition of his (intestate's) mind, at said time?" The contestants objected to this question, because it called for testimony *as to a transaction with the decedent;* and the court sustained the objection.

In the further progress of the trial, the appellant, for the purpose of showing that the consideration of the note was necessaries, and things suitable to the degree and condition in life of the family of the decedent, offered his (appellant's) books of original entry as a merchant, showing items of articles charged to the decedent in the handwriting of his deceased clerk, one D. H. Sellers, These charges purported to have been made during the year 1873, before and after the making of the note of intestate, which had been given in evidence. The contestants objected, and the objection was sustained.

These rulings of the court were excepted to, and now form the matter of the assignments of error.

A proceeding in the Court of Probate, under the statute, by a personal representative, for an order to sell the lands of a testator or intestate for the payment of debts, is directed against the lands, and is a suit *in rem.* The heirs, or devisees, are made parties; and, if they intervene and contest the application, it then assumes the further character of a suit *in personam.* The necessary allegation of the application of the personal representative is the existence of debts which the personal assets are insufficient to satisfy. The allegation involves two disputable facts—the insufficiency of personal assets, and the existence of debts chargeable upon the lands. The burden of proving these facts affirmatively, rests upon the personal representative. The heir or devisee intervening, standing in the relation of a defendant, claiming in succession to the testator or intestate, may make any de-

[Davis v. Tarver.]

fense against the supposed debts, which he could have made if living, or which the personal representative could make, if the creditors were suing him at law.—*Bond v. Smith*, 2 Ala. 660 ; *Garrett v. Brewer*, 59 Ala. 513. It is, of consequence, a suit or proceeding in which the competency of witnesses must be determined by the statute.—Code of 1876, § 3058.

Under the statute, there can be no exclusion of any witness because he is a party to, or interested in the issue tried, with this exception, *that neither party shall be allowed to testify against the other, as to any transaction with, or statement by any deceased person, whose estate is interested in the result of the suit.* The exception is intended to secure mutuality in the operation of the statute, and to protect the dead, who can not be heard in explanation or contradiction, from being affected by the evidence of the living with whom they may have had dealings. It is directed to the exclusion of particular evidence, rather than to the competency of the witness. The evidence excluded must be *of transactions with, or statements by a deceased person, whose estate is interested in the result of the suit.* Any party may testify to any material, relevant fact, if it does, not fall within this species of evidence.— *Thomas v. Thomas*, 42 Ala. 120 ; *O' Neal v. Reynolds, Ib.* 197 ; *Gold Life Ins. Co. v. Sledge*, 62 Ala. 566.

It is apparent that the contention in the present case was narrowed to the inquiry, whether, on the day when the note was executed by the intestate, he was of sufficient understanding to enter into a contract. The appellant could, doubtless, have testified that, in his opinion, the intestate was generally of a sufficient understanding to act with discretion in the ordinary affairs of life. His personal relation to the intestate, his long acquaintance with him, and the opportunities he had of observing and knowing his habits, temper, character, and capacity, would have authorized an inquiry into the opinion he had formed as to the soundness and degree of the understanding of the intestate. This opinion would have been formed on facts independent of, and distinct from the conduct, acts, or declarations of the intestate, when the note was executed. But it was not the opinion of the appellant as to the general sanity of the intestate which was sought to be elicited. Having testified as to his general sanity, he is asked, if he knew the condition of the mind of the intestate on the day the note was executed. Answering that question affirmatively, he is asked, what then was the condition of his mind. His opinion or knowledge of the mental condition of the intestate must have been derived, in part, or wholly, from his conduct and declarations on that day, and from his freedom from, or subjection to the

influence of the disease with which he was afflicted. Insanity is most often shown by the acts and declarations of the party to whom it is imputed. It is the impression these make upon the mind of the physician, or of his acquaintances who have the opportunity of observing him closely and frequently, that as an opinion they may communicate as legal evidence. When, therefore, a physician, or a relative, or acquaintance, is asked to express an opinion as to the sanity of a person at a particular point of time, he is asked, in effect, what was his conduct, made up of his acts and declarations, at that time. It is these acts and declarations, the statute prohibits the living party from testifying to, when the estate of a decedent is interested. The prohibition can not be avoided by any general forms of question, nor by covering up evidence of them under the expression of an opinion founded upon them. They are excluded by the terms of the exception, and its policy will be defeated, if evidence of them, in whatever form it may be presented, is not excluded.

The note may have been invalid, because of the incapacity of the intestate to contract at the time of its execution; yet, if its consideration was necessaries furnished the intestate, a legal liability would rest upon him to pay for them, which would be a debt chargeable on his estate.—*Ex parte North-ington*, 37 Ala. 496; *Westmoreland v. Davis*, 1 Ala. 299; *Harris v. Davis, Ib.* 259. The charges made against the intestate, by Sellers, the deceased clerk, on the books of the appellant, if they were contemporaneous, and in the line of Sellers' duty as clerk, would have been admissible as evidence. But they could not have been evidence of more than the truth of the entries of the sale and delivery of the goods at the times and prices charged, if, as we infer, such was the character of the entries. The proposition was, to introduce them, not only as evidence of the sale and delivery of the goods, but as evidence that they formed the consideration of the note, and that the goods were necessaries suitable to the degree and condition in life of the family of the intestate. It is obvious that, of these latter facts, the entries could not be, and were not evidence. The court was not bound to modify the proposition of the appellant, and limit the evidence to the only purposes for which it was admissible. Nor was there error in rejecting it, when offered for purposes for which it was inadmissible.

Let the decree be affirmed.