# Miller, Admr., *et al.* v. Mayer, Admr.

*Application to Sell Land to Pay Debts of Intestate.*

1. *Application to sell land; disinterested witnesses not required to prove debts.*—In a proceeding in the probate court on an application to sell land to pay the debts of an intestate, it is not required that the existence of debts be proved by disinterested witnesses.

2. *Same; legal proof demanded.*—Whether the facts alleged in an application to the probate court to sell land to pay the debts of a decedent are true or not is a matter of legal proof, and must be determined not from the mere opinion of witnesses on the subject. The proof can be made only by showing the existence and amount of valid debts, and that the available personal assets are not of sufficient value to pay or discharge them.

3. *Same; who not competent witness to prove debt.*—A member of a firm which claims an indebtedness to it from the estate of a deceased person, is not a competent witness to prove the indebtedness, on the application of the administrator of the

[Miller, Admr. *et al.* v. Mayer, Admr.]

estate to sell the land of the estate for payment of debts.

4. *Same; how much land should be sold.*—If an administrator applies to the probate court for an order to sell land to pay the debts of the decedent, and debts are proven, but greatly less in amount than the value of the land of the estate, the court should not order a sale of the whole land but only so much thereof as would be necessary to pay the indebtedness. Code, § 165.

5. *Illegal evidence; raises presumption of injury.*—Where a cause is tried by the court without a jury, the admission of illegal evidence raises a presumption of injury, and requires reversal of the judgment, unless the remaining evidence is without conflict and is sufficient to support the judgment. Hence, it is error in the probate court on an application for the sale of land to permit witnesses to answer questions as to what they thought of the necessities of a sale, and to give their opinion relative thereto.

APPEAL from Marengo Probate Court.
Tried before Hon. S. G. WOOLF.

This case was the application of Morris Mayer as the administrator of the estate of Allen Kornegay to the probate court for an order to sell lands of the estate to pay debts. The facts fully appear in the opinion.

MILLER & KIRVEN, for appellants.—On the admission and rejection of evidence on the hearing of the application, appellant cited the following authorities.—87 Ala. 727; *Richardson v. Stringfellow,* 100 Ala. 416; 96 Ala. 33; 6 Port. 121.

C. ABRAHAMS, *Contra.*

HARALSON, J.—Application to sell land to pay debts of an intestate.

"In cases of intestacy, lands may be sold by the administrator for the payment of debts, when the personal property is insufficient therefor."—Code, § 156. The application for such purpose must be made by the administrator, verified by affidavit, to the probate court having jurisdiction of the estate, and what the application must contain is prescribed by section 158 of the Code. The burden is on the applicant to "show to the court that the personal property of the estate is insufficient for

the payment of debts; and such proof—as to the insufficiency of personal property to pay the debts,—must be made by the depositions of disinterested witnesses, and filed and recorded."—§ 164.   This section does not require the existence of debts to be proved by disinterested witnesses.—*Alford v. Alford,* 96 Ala. 385; *Garrett v. Bruner,* 59 Ala. 513.   "Whatever the amount of the indebtedness may be, if it exceeds the value of the personalty, it is a proper case for the exercise of the jurisdiction under the statute."—*Cotton v. Halloway,* 96 Ala. 544, 549.

On the hearing of such application, if the applicant satisfies the court that the allegations of the petitions are true, the court may direct a sale of all or such portion of the real estate as may be necessary to pay the debts; but if they are not proved, the application must be dismissed at the cost of the applicant.—Code, § § 165, 168.   Whether the facts averred are true or not, is a matter of legal proof, and must be determined not from the mere opinions of witnesses on the subject.   "The proof can be made only by showing the existence and amount of valid debts, and that the available personal assets are not of sufficient value to pay or discharge them."   Whether there should be a sale or not is, therefore, a matter of legal conclusion and judgment of the court, founded on facts which have been proved by competent, legal evidence.—*Quarles v. Campbell,* 72 Ala. 64; *Davis v. Tarver,* 65 Ala. 98.

There were only two persons by whom it was attempted to be shown, that the intestate, Allen Kornegay, was indebted at the time of his death, viz., Mayer Brothers, of which firm, Morris Mayer, the administrator, was a member, and John C. Webb.   As to the first alleged indebtedness, there was evidence allowed to be introduced by the plaintiff, against contestants' objections and exceptions, to show its existence and amount, and evidence was introduced by contestants tending to show that deceased owed that firm nothing, at the date of his death. One of the witnesses, on whom the administrator relied to prove this alleged indebtedness, was H. B. Park, who, it was admitted was a member of the firm of Mayer Brothers, during the time the alleged indebtedness is

said to have accrued, and up to the time of the trial. The contestants objected to his making proof of said account, amongst other grounds, because he was called to testify as to transactions had by the firm of which he was a member, with the deceased, as to which he was incompetent to testify. But the court overruled the objection and allowed him to testify as to such transactions, and to prove the correctness of the account. In this there was manifest error.—Code, § 1794; *Edwards v. Parker,* 88 Ala. 356; *Stanley v. Sheffield Co.,* 83 Ala. 260; *Parker v. Edwards,* 85 Ala. 246. The only other witness by whom the account of Mayer Brothers was sought to be proved, was Isadore Bley, who deposed that deceased owed said firm the sum of $318.95; but on cross-examination, he showed he was testifying not from his own knowledge but from what he found on the books of the firm, which he did not keep, and really knew nothing of the correctness of the account.

The proof as to John C. Webb's account shows quite satisfactorily, that deceased owed him at the date of his death some seventy-odd dollars, not including interest. If this indebtedness exceeded the amount of the personal property belonging to the estate, it was sufficient on which to base a decree of sale to pay debts. But, if this were true, it does not follow that the court should order a sale of the entire tract of land, worth as the proof tended to show many times such an indebtedness, but it might and would be proper in such case, to order a sale of only so much of the tract as would be necessary to pay the indebtedness.—Code, § 165.

There was evidence tending to show that the deceased owned considerable personal property at the time of his death, sufficient, as some of the evidence tended to show, to pay all the debts he owed, and some of it, that it was insufficient for the purpose. It was shown that the administrator had not filed an inventory and appraisement of the personal property of the estate.

At the conclusion of the evidence, the court made and entered an order, in which it is recited, "Upon an examination of all the pleadings and all the testimony on file and taken in this hearing, the court is satisfied that there are some debts due by said decedent; that there was and

is, some personal property of said estate unsold. The evidence in this cause is conflicting, confusing and very unsatisfactory, and the court is unable, with any certainty, to say how much is due the creditors of said estate, and as to what is the value of the available personal property of decedent with which the administrator is chargeable." It was thereupon ordered "that the decree upon said application be and it is hereby postponed until the further orders herein have been complied with, and the condition of said estate ascertained by the court." The administrator was ordered to file at once in court an inventory and appraisement of all the property, real and personal, of said decedent which he owned, and what the administrator should have taken into his possession upon his qualification as such administrator, and that he file at once his accounts and vouchers and evidences of debt for a partial settlement of his administration. This order was dated the 29th October, 1897.

Whether this order was ever complied with, and what proceedings were afterwards taken under it, are not shown; but the next thing appearing, is the final decree of sale, made and entered May 30th, 1898, which begins, "This being the day appointed more than forty days since, for hearing the application (of said administrator) for an order to sell certain lands hereinafter described for the purpose of paying the debts due from said estate, * * * * * and it appearing to the satisfaction of the court by the oaths of James B. Kornegay, Thomas F. Howze and George W. Taylor, disinterested witnesses, whose testimony has been taken by deposition, as in chancery proceedings, * * * * that the personal property is insufficient to pay the debts of said estate, and that it is necessary and will be to the interest of said estate that the lands described * * * * be sold for the purpose of paying the debts of said estate,' etc.; it was ordered that they be sold for the purpose.

The question is raised as to the power of the court to make said order of the 29th of October, 1897, postponing the hearing of the application to another, indefinite day, and ordering the administrator to file an inventory and make a partial settlement, instead of making its final decree granting or denying the application. But, however

that may be, we deem it unnecessary to decide that question now, but will deal with the order of sale that was made.

Many witnesses were examined by the applicant, and many of them were asked and allowed to answer questions as to what they thought of the necessities of a sale, and to give their opinions relative thereto. All such questions were improper, and the answers thereto should have been excluded on the proper objections of contestants made thereto. Such questions and answers are too numerous to pass on them *seriatim*. It is sufficient to condemn them generally. Witnesses to support such an application should as we have stated, state facts, not opinions, and it was for the court to draw conclusions therefrom. It may be, the court proceeded on the presumption, if there was sufficient legal evidence besides this illegal evidence, to support a decree, it would be presumed that all illegal testimony was eliminated in its rendition. The more recent rule established in this court is, that where a cause is tried by the court without a jury, the admission of illegal evidence raises a presumption of injury, and requires reversal of the judgment, unless the remaining evidence is without conflict, and is sufficient to support the judgment.—*First Nat. Bank of Talladega v. Chaffin,* 118 Ala. 246.

The court, as we have seen from the order made, based its decree on the testimony of James B. Kornegay, Thomas F. Howze and George W. Taylor, and in this, let it be conceded, he was attempting to discard from consideration the evidence of all other witnesses as to the sufficiency of the personal property to pay the debts, and the consequent necessity for a sale.

The testimony of George W. Taylor is not made the basis of any assignment of error. Turning, however, to the evidence of James B. Kornegay and Thomas F. Howze, on which the court stated it based the decree rendered, we find that the witness Kornegay was asked and allowed to answer, against the proper objections and exceptions of contestants, giving his opinions as follows: "I think Allen Kornegay owed debts at his death." "I understand he owed Mayer Bros. and Jno. C. Webb." "I don't think his personal property would

have paid his debts at his death." "I think it necessary to sell this real estate in order to pay his debts." "I think it will be necessary to sell all of his land to pay his debts." Thomas F. Howze was asked the same questions, and was allowed to answer in substantially the same manner. This evidence should not have been admitted, and the decree of sale which, it seems was based on it, must be held to be erroneous.

Reversed and remanded.